**James Alexander RICHARDS, Appellant,**

v.

**Karen Sue RICHARDS, Appellee.**

**No. 01–09–01066–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 19, 2012.

Amy Rayann Harris, Patricia A. Wicoff, Schlanger, Silver, Barg & Paine, LLP, Houston, TX, for Appellant.

Anne Marie Cofer, Robertson Neal, Attorneys at Law, Bryan, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION ON REHEARING

LAURA CARTER HIGLEY, Justice.

We originally issued our memorandum opinion in this appeal on December 29, 2011. Appellant, James Alexander Richards, has filed a motion for rehearing and motion for en banc reconsideration. We deny the motion for rehearing, vacate our earlier judgment, withdraw our previous opinion, and issue this opinion in its place. Accordingly, we dismiss the motion for en banc reconsideration as moot.[1]

James appeals from a decree of divorce dissolving the marriage between him and appellee, Karen Sue Richards. In seven issues, appellant argues the trial court erred by (1) characterizing certain property as community property; (2) placing the burden of proof on him to establish certain property claims; (3) awarding Karen certain future income; (4) ordering a lien on his separate property; (5) failing to recog-

---

1. *See Brookshire Bros., Inc. v. Smith,* 176 S.W.3d 30, 40 n. 2 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

nize his economic contribution claim; (6) rescinding its earlier order on a motion for summary judgment; and (7) awarding Karen attorneys' fees on appeal without awarding him any. Karen subsequently filed a motion to dismiss under the acceptance of the benefits doctrine.

We dismiss this appeal as moot.

## Background

James and Karen were married on December 31, 1999. Karen filed for divorce on January 22, 2008, and James counterfiled on March 4. Following a trial, the trial court rendered its final decree of divorce on September 10, 2009. In dividing the marital estate, the trial court determined five boats were community property and awarded them to James.

On January 5, 2010, the trial court held a hearing on Karen's motion for temporary orders pending appeal. At that hearing, James testified that he had sold two boats: a 39–foot 2002 Mainship and a 29–foot 1994 Proline. He also testified that a third boat—a 34–foot 1999 Navigator Baywatch—was under a contract for sale, which was being paid in monthly installments. James stated he had used the proceeds of the sales to pay down a loan, pay bills, and put into his business. Based on this testimony, Karen filed a motion to dismiss under the acceptance of the benefits doctrine. We issued an order stating the motion would be carried with the case.

## Acceptance of Benefits of Judgment

Under the acceptance of the benefits doctrine, "[a] litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). "The doctrine arises most often in divorce cases in which one spouse accepts certain assets awarded by the judgment and then seeks to appeal the remainder of the judgment." *Williams v. LifeCare Hosps. of N. Tex.,* 207 S.W.3d 828, 830 (Tex.App.-Fort Worth 2006, no pet.). If a party accepts the benefits of a judgment, he is estopped from challenging that judgment on appeal. *Waite v. Waite,* 150 S.W.3d 797, 803 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). In that event, the appeal is rendered moot and must be dismissed. *Harlow Land Co., Ltd. v. City of Melissa,* 314 S.W.3d 713, 716 (Tex.App.-Dallas 2010, no pet.).

The appellee bears the burden of proof to establish application of the acceptance of the benefits doctrine. *Waite,* 150 S.W.3d at 803. The parties may rely on affidavits and other satisfactory evidence to establish whether the appellate court retains jurisdiction over the appeal. *See* Tex. Gov't Code Ann. § 22.220(c) (Vernon Supp.2011) (appellate courts may consider affidavits and other evidence to determine proper exercise of its jurisdiction); Tex. R.App. P. 10.2 (requiring inclusion of affidavits and other satisfactory evidence with motions in certain circumstances); *Twin City Fire Ins. Co. v. Jones,* 834 S.W.2d 114, 116 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (holding appellate court can consider affidavits and other evidence in determining motion to dismiss).

An appellant may avoid the application of the acceptance of the benefits doctrine by showing the application of either of two exceptions: (1) acceptance of the benefits of the judgment was a result of financial duress or other economic circumstances or (2) reversal of the judgment on the grounds appealed could not possibly affect the appellant's right to benefits accepted. *Williams,* 207 S.W.3d at 830; *Waite,* 150 S.W.3d at 803–04. These exceptions are narrow. *Waite,* 150

S.W.3d at 804. The appellant bears the burden of establishing the application of the exceptions. *See id.* (holding "unless [appellant] satisfies an exception to the acceptance of the benefits doctrine or otherwise shows that it does not apply, we must agree with [appellee] that [appellant]'s actions in accepting a substantial portion of the judgment bars him from appealing that same judgment he now attacks"); *Smith v. Tex. Commerce Bank–Corpus Christi, N.A.,* 822 S.W.2d 812, 814 (Tex.App.-Corpus Christi 1992, writ denied) (holding appellant failed to establish application of exception and, accordingly, appellant was estopped from challenging judgment on appeal); *see also Williams,* 207 S.W.3d at 830–32 (considering appellant's arguments for the application of exceptions as opposed to appellee's arguments against their application).

To meet her burden of showing that James has accepted the benefits of the judgment, Karen cites to James's testimony from the hearing on Karen's motion for temporary orders pending appeal. At that hearing, James testified that he had sold two boats that had been awarded to him from the community estate: the Mainship and the Proline. A third boat awarded to him from the community estate—the Navigator Baywatch—was under contract for sale and was being paid in monthly installments. We hold that Karen met her burden of establishing James had accepted the benefits of the judgment. *See Waite,* 150 S.W.3d at 804 (holding taking possession of community funds and filing deed transferring wife's interest in home to husband is sufficient to establish acceptance of benefits of judgment).

James does not dispute that he has accepted the benefits of the judgment. Instead, he argues the sale of the boats was an economic necessity. At the hearing, he described his financial situation as "almost bankruptcy" and that his expenses were greater than what he brought in. While he provided some examples of how he was losing income on his rental properties, James did not provide a detailed explanation—through testimony or exhibits—of what his monthly income and expenses were.

James also cites to his affidavit attached to the response to Karen's motion for support for his claim that he was in dire financial straits. The only mention in his affidavit of his economic condition, however, is his attempt to explain why he could not sell the separate property Karen identified and why he had to sell the boats at the time that he did. His explanation for why he had to sell the boats was his assertion that the market for boats was crashing and the cost of maintaining them were outweighing their value. James does not otherwise provide any proof of his monthly income and monthly expenditures.

In the body of his response to Karen's motion, James asserts without support that the net value of the community (which he defines as assets awarded less debts apportioned) awarded to him is negative $142,063 while the amount awarded to Karen is positive $318,672. In his brief on the merits, James presents a table of calculations reaching the same numbers. This table, however, is based on the assumption that the trial court mischaracterized certain property as community instead of separate. Without this assumption—that is, as reflected currently in the judgment—James acknowledges his share of the community property is positive $711,502.

In *Waite,* the appellant asserted in an affidavit that he had to take the money awarded to him from the court registry because he needed to pay daily living expenses and to complete repairs on his home, which had been designated as his

separate property. 150 S.W.3d at 805. He also asserted that the tax refund awarded to him was only a return of money he had advanced as a result of an accounting error and that he had not sold or encumbered the home that he had taken possession of and filed a lien establishing he was the sole owner. *Id.* The court held that the appellant's affidavit did not support his claim of economic necessity because it was largely conclusory. *Id.* The court observed that the appellant had offered few specifics to support his initial contention that he needed the money awarded to him to pay his daily living expenses, stating only that he had to pay for such things as food, clothing, rent, and insurance. *Id.* Nor had he presented any proof of what his other assets or sources of income were. *Id.* at 805–06. The court held that the appellant had failed to show that he accepted the benefits because of economic necessity and granted the motion to dismiss. *Id.* at 808.

In contrast, the appellant in *Garza* provided detailed information of what her monthly income was as well as what her monthly expenditures were. *Garza v. Garza*, 155 S.W.3d 471, 473 (Tex.App.-San Antonio 2004, no pet.). She also established that she did not have other assets that could be sold or other sources of income. *Id.* at 474. Based on the detailed information provided, the appellate court determined that the appellant's use of the payments for her equity interest in the marital homestead was an economic necessity. *Id.* at 475.

We determine this case is similar to *Waite.* James does not provide any detailed explanation of his economic circumstances. Instead, he provides a mostly conclusory assertion that he is near bankruptcy and that his expenses were greater than his income. While some information is present, it is not enough to determine, with any degree of certainty, what his monthly income and obligations are. Accordingly, James has failed to establish he falls in the narrow exception of economic necessity.

Moreover, we note that James's explanation for why he had to sell the community-property boats is at odds with why he could not sell his separate-property real estate. In his response to Karen's motion to dismiss, James argues he had to sell the boats because (1) he was incurring costly monthly expenses, including insurance and monthly maintenance and (2) the market value of the boats was decreasing due to the economy. He simultaneously argues that he could not sell his rental properties because he would "suffer[ ] a loss in the current depressed real estate market" despite the fact that he was incurring costly monthly expenses, including insurance and monthly maintenance. He backed up both of these arguments by relying on testimony presented to the trial court at the hearing on Karen's motion for temporary orders pending appeal. Jim acknowledged that he had lost two of his nine commercial real estate tenants, that he would have to incur further expenses by their loss, including bills and maintenance fees that those tenants otherwise would have paid and advertising fees to find a new tenant. As James explained during the hearing, "With our economy the way it is, I expect a long dry spell."

Additionally, James offers no explanation for how the declining value of the boats or the real estate along with their attendant costs was not known to him prior to the decree of divorce or why he could not have sought accommodations—either from Karen or from the trial court—to sell the community property prior to the decree of divorce.

James also argues that the trial court's unequal division of the community estate is

enough to establish economic necessity. He relies on *Smith v. Smith,* 143 S.W.3d 206 (Tex.App.-Waco 2004, no pet.) as authority for his argument. In *Smith,* the appellant withdrew from the court registry money awarded to her from the community estate. *Id.* at 212. In that case, the trial court determined that the appellant had no separate property and awarded her a portion of the community property that was less than or equal to the obligations assigned to her. *Id.* at 211, 212. The court concluded that the appellant fell within the exception of economic necessity. *Id.* at 212.

Even if we were to adopt the holding of *Smith,* it is unavailing. As we have noted, James provides no support for his assertion that his award of the community property coupled with his assignment of obligations is a negative amount. The calculation in his brief on the merits that reflects this amount is based on the assumption that this Court will agree with his argument on the merits that the trial court mischaracterized certain property as community instead of his separate property. Even if James prevailed on this point, however, the property would still be his; it would just be characterized as separate property instead of community. Accordingly, adding the value of all of his assets and obligations, he still has a positive net worth. Based on his own calculations in his brief on the merits, it is a net worth in excess of $700,000. In contrast, the appellant in *Smith* had no separate property and was left with only a negative net worth. *Id.* at 211, 212. Complaining of receiving a negative combined amount of community assets and joint obligations, by itself, does not establish economic necessity.

## Conclusion

Karen established that James accepted the benefits of the judgment. James has failed to establish that he falls within the narrow exception of economic necessity. Accordingly, we grant Karen's motion and dismiss the appeal as moot.