**DISMISS; and Opinion Filed June 3, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01560-CV

## IN THE INTEREST OF L.T. AND E.T., CHILDREN

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-52955-2011**

## MEMORANDUM OPINION
Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice Fillmore

Yadira Tarango Aguirre appeals from a divorce decree dissolving the marriage between her and Saul Tarango complaining, in eleven issues, about the trial court's division of the marital estate. Tarango contends Aguirre is estopped from bringing this appeal because she accepted the benefits of the divorce decree. We dismiss the appeal for lack of jurisdiction. We issue this memorandum opinion because the law to be applied in this case is well-settled. *See* TEX. R. APP. P. 47.1, 47.4.

### Background

Aguirre and Tarango married in April 1992. On June 10, 2011, Tarango filed for divorce. Aguirre subsequently filed a counter-petition. The only witnesses at the trial before the court on May 14, 2012 were Tarango, Aguirre, and Tarango's attorney. Both Tarango and Aguirre testified about the conservatorship of L.T. and E.T., the couple's two children. Tarango also offered testimony and evidence about his and Aguirre's incomes, assets belonging to the

community estate, assets he claimed as his separate property, and the amount of the community debts. Aguirre testified about her and Tarango's incomes, but offered no evidence of the value of the community assets or the amount of the community debts. Tarango's attorney testified that Tarango had incurred attorney's fees of $12,934.50. Tarango requested the trial court consider the amount of attorney's fees he had incurred when dividing the marital estate.

The trial court granted the divorce and made orders for the conservatorship and support of L.T. and E.T. The trial court also divided the marital estate. Tarango was awarded the marital residence and the land on which it was located, a contract for the cellular tower located on the property, all personal property and cash in his possession, all life insurance policies insuring his life, a 2002 Ford F250, a Dump trailer, a 1999 Speedy Bill 18-wheeler cab motor vehicle, and his trucking business. Aguirre was awarded all personal property and cash in her possession, all life insurance policies insuring her life, a 2010 Volvo, a 2008 Ford F150, her cleaning business, and $18,000 "for her portion of the land and trailer." Except any debt owed on the 2010 Volvo or the 2008 Ford F150 awarded to Aguirre, Tarango was required to pay all outstanding community debt, including the mortgage on the marital residence, which was more than its appraised value; the amount owed on the Dump trailer; and almost $20,000 in credit card debt.[1] The trial court ordered that a bull, a cow, and a calf be sold and that Tarango and Aguirre each receive fifty percent of the sales proceeds. Finally, the trial court ordered that, "to effect an equitable division of the estate of the parties and as a part of the division," each party was responsible for paying his or her own attorney's fees. Aguirre appealed only the trial court's division of property

In his responsive brief on appeal, Tarango raised the issue of whether Aguirre is estopped from bringing this appeal because she accepted payment for her share of the marital residence

---

[1] We recognize that one of the parties' credit cards, a Bank of America card ending in 9579 with an outstanding balance of $6173.14, is listed twice in the trial court's judgment. However, the evidence at trial established there was also a Bank of America credit card ending in 4448 with an outstanding balance of $3,612.76. The trial court ordered that Tarango was responsible for paying this debt as well. The total credit card debt assumed by Tarango was $19,865.63.

and the land on which it is located and for her share of the proceeds from the sale of certain livestock. On May 7, 2014, we notified the parties that we would consider Tarango's issue as a motion to dismiss the appeal. We specifically requested the parties file letter briefs, along with supporting affidavits, regarding the jurisdictional question of whether Aguirre had accepted benefits under the judgment that she was now challenging on appeal. *See* TEX. GOV'T CODE ANN. § 22.220(c) (West Supp. 2013) ("Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction."); *Demler v. Demler*, 836 S.W.2d 696, 698 (Tex. App.—Dallas 1992, no writ) (when record does not clearly reflect acceptance of benefits, one appropriate way to develop record is through affidavits), *disapproved on other grounds*, *Dallas Mkt. Ctr. Dev. Co. v. Liedeker*, 958 S.W.2d 382, 386–87 (Tex. 1997) (per curiam).

In his jurisdictional letter brief, Tarango stated that, on October 17, 2012, his attorney delivered to Aguirre's attorney (1) a check for $18,000, representing the amount awarded to Aguirre in the divorce decree "for her portion of the land and trailer," (2) three checks, each in the amount of $657.14, representing child support for August, September, and October 2012, and (3) a check for $1,732, representing the one-half share awarded to Aguirre in the divorce decree of the proceeds from the sale of a bull and a calf and that Aguirre negotiated the checks on October 22, 2012.[2] Supporting Tarnago's jurisdictional brief are an affidavit from his attorney regarding the transmittal of the checks to Aguirre's counsel and an affidavit from Tarango regarding the preparation of the checks. Attached to Tarango's affidavits are copies of the front and back of each check showing that Aguirre endorsed and negotiated each check.

---

[2] Tarango's attorney represented in correspondence to Aguirre's attorney dated October 27, 2012 that Tarango had not yet sold the cow that was also the subject of the divorce decree. Tarango's attorney represented that Tarango believed the cow could be sold for approximately $1,000 and Aguirre's share would be $500. There is no evidence in the record regarding whether the cow was sold or for how much or whether Aguirre accepted her share of the sales proceeds.

In her jurisdictional letter brief, Aguirre did not dispute that she accepted $18,000 for her share of the marital residence and the property on which it is located and $1,732 for her share of the proceeds from the sale of some of the livestock. Rather, she argues the acceptance of the benefits doctrine does not apply because she accepted only property "which the opponent concedes, or is bound to concede" is due to her and because economic necessity required her to accept the funds. Aguirre neither submitted any affidavits nor included record cites to any evidence in support of her arguments.

## Analysis

Generally, a party "cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." *Tex. State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002) (quoting *Carle v. Carle*, 234 S.W.2d 1002, 1004 (1950) (op. on reh'g)). The acceptance of the benefits doctrine commonly arises in divorce cases when a former spouse accepts certain assets awarded in the judgment and seeks to appeal the remainder of the judgment. *In re M.A.H.*, 365 S.W.3d 814, 818 (Tex. App.—Dallas 2012, no pet.); *F.M.G.W. v. D.S.W.*, 402 S.W.3d 329, 332 (Tex. App.—El Paso 2013, no pet.). The appellee bears the burden of proving the appellant is estopped from challenging the judgment by appeal. *In re M.A.H.*, 365 S.W.3d at 818; *F.M.G.W.*, 402 S.W.3d at 332. When the doctrine applies, an appeal is rendered moot, and the proper disposition is dismissal. *Harlow Land Co. Ltd. v. City of Melissa*, 314 S.W.3d 713, 716 (Tex. App.—Dallas 2010, no pet.); *F.M.G.W.*, 402 S.W.3d at 332.

There are narrow exceptions that permit the appellant to avoid the application of the doctrine. *Amaro*, 87 S.W.3d at 544; *F.M.G.W.*, 402 S.W.3d at 332. The doctrine does not apply when: (1) the acceptance of the benefits is not voluntary because of financial duress or other economic circumstances; or (2) the reversal of the judgment on the grounds appealed cannot

–4–

possibly affect the appellant's right to the benefits accepted under the judgment. *Amaro*, 87 S.W.3d at 544; *In re M.A.H.*, 365 S.W.3d at 818; *Richards v. Richards*, 371 S.W.3d 412, 414 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (op. on reh'g). The appellant has the burden of establishing the applicability of an exception to the doctrine. *F.M.G.W.*, 402 S.W.3d at 332; *Richards*, 371 S.W.3d at 415.

The evidence at trial established that Aguirre was in possession of the 2008 Ford F150, the 2010 Volvo, the personal property and cash under her control, and her cleaning business. Tarango has established that, after the divorce decree was signed, Aguirre accepted and negotiated checks in the amount of $18,000 for her share of the marital residence and the land on which it is located and in the amount of $1,732 for Aguirre's fifty-percent share of the proceeds from the sale of a bull and a calf.[3] Accordingly, Aguirre has taken control of practically every significant asset awarded to her in the divorce decree. We conclude that Tarango has met his burden of establishing that Aguirre accepted the benefits of the divorce decree. *See Leedy v. Leedy*, 399 S.W.3d 335, 338, 343 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (op. on reh'g) (concluding that similar evidence established appellant had accepted benefits of judgment).

We next turn to whether Aguirre met her burden of establishing that an exception to the doctrine is applicable in this case. Aguirre first argues she is not estopped by the acceptance of the benefits doctrine from bringing this appeal because it is undisputed she is entitled to the property she received, and the only issue on appeal is whether she should receive a greater share of the marital estate. *See Amaro*, 87 S.W.3d at 544 (As long as an appellant "accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment he is not

---

[3] Because the amount of child support awarded to Aguirre in the divorce decree is not an issue on appeal and is severable from the property division, Aguirre's acceptance of child support payments awarded in the divorce decree does not affect her right to appeal the property division. *See Tomsu v. Tomsu*, 381 S.W.3d 715, 717 (Tex. App.—Beaumont 2012, no pet.) (acceptance of benefits doctrine does not preclude spouse who accepted property awarded in decree from appealing issues relating to spousal maintenance); *Roa v. Roa*, 970 S.W.2d 163, 166 (Tex. App.—Fort Worth 1998, no pet.) (spouse who accepts property division is not estopped from appealing severable portion of judgment, such as child support).

estopped to prosecute an appeal which involves only his right to a further recovery." (quoting *Carle*, 234 S.W.2d at 1004)).  The entitlement exception is a narrow one and rests upon whether (1) a reversal of the judgment could possibly affect Aguirre's right to the benefits accepted by her under the judgment, and (2) Tarango would be compelled to concede in a new trial that Aguirre has a right to retain the benefits regardless of the outcome of the litigation.  *Carle*, 234 S.W.2d at 1004; *Waite v. Waite*, 150 S.W.3d 797, 807 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).  For this exception to apply, Aguirre's "right to the benefits accepted must be unquestionable." *Leedy*, 399 S.W.3d at 341; *see also Waite*, 150 S.W.3d at 807.

At trial, Tarango requested that he be awarded the 2008 F150 and that the livestock be kept for the parties' children.  He also testified that the value of Aguirre's share of the marital residence and the land on which it located was $10,000.  Therefore, Tarango did not concede that Aguirre is due all the property accepted by her.

Further, Aguirre has not shown that, if the property division is reversed on appeal, she would have an undisputed right to the funds she accepted.  Although there was no evidence of an outstanding debt on the property on which the marital residence was located, there was evidence that the marital residence itself was appraised at less than the amount owed on the mortgage.  There was limited evidence of the value of Tarango's trucking business and no evidence of the value of Aguirre's cleaning business.  Tarango testified that, other than the "dish," he paid all community bills during the pendency of the divorce, including the mortgage and insurance on the marital residence, utilities for the marital residence, payments on the loan for the 2008 F150 awarded to Aguirre, insurance for the 2002 F250 and the 2008 F150, and payments on the parties' outstanding credit card debt.  Tarango further testified that Aguirre kept all money she earned during the eleven months the divorce was pending and that he periodically gave Aguirre money for the children.  Aguirre testified that, during the pendency of the divorce, she made the

payments on the loan for the 2010 Volvo, which she purchased after Tarango filed for divorce, paid for insurance on the 2010 Volvo, and paid for most of the children's personal expenses. Aguirre failed to respond to discovery inquiring about her income during the pendency of the divorce and the community assets under her control and did not testify at trial about the value of those assets, including the 2008 F150, the 2010 Volvo, and the balance in her checking account. All of those assets, as well as her cleaning business, were awarded to Aguirre. There was evidence that Tarango had incurred over $12,000 in attorney's fees that he was required to pay. There was no evidence of the amount of attorney's fees incurred by Aguirre. Finally, the trial court required Tarango to pay all the community debt.

Based on this record, we cannot conclude that Aguirre was bound to receive all the property awarded to her in the divorce decree. While she might receive more following a new trial with a more developed record, she might also receive less. *See* TEX. FAM. CODE ANN. § 7.001 (West 2006) ("just and right" division of community estate); *Bloom v. Bloom*, 935 S.W.2d 942, 947-48 (Tex. App.—San Antonio 1996, no writ). We cannot conclude that it is unquestionable that, if this case was reversed, Aguirre would be entitled to receive more of the marital estate than was awarded to her in the divorce decree. We conclude that Aguirre has failed to establish the entitlement exception applies in this case. *See Barras v. Stark*, No. 09-12-00499-CV, 2013 WL 3487360, at *1 (Tex. App.—Beaumont July 11, 2013, pet. denied) (mem. op.); *Waite*, 150 S.W.3d at 807.[4]

---

[4] Although not relied upon by Aguirre, we recognize there is an exception to the acceptance of the benefits doctrine when the appellant has received only cash payments, the use of which would not prejudice the appellee. *See Demler*, 836 S.W.2d at 698; *Leedy*, 399 S.W.3d at 342. This exception is based on the premise that the trial court could take the accepted benefits into account when making any new division of property in the event of a remand. *Demler*, 836 S.W.2d at 698; *Leedy*, 399 S.W.3d at 342. However, in this case, at least a portion of the cash received by Aguirre was from the sale of community property pursuant to the trial court's order. Further, the evidence at trial did not establish that Tarango had $18,000 in cash to pay Aguirre her share of the marital residence and the land on which it is located. There is nothing in the record to establish the source of the $18,000 that was paid to Aguirre or whether Tarango was required to sell community assets to raise the funds. Finally, as set out above, there was no evidence of the value of a number of the assets awarded to Tarango and Aguirre. Aguirre does not cite or discuss any evidence of the total value of the marital estate and does not offer any evidence on appeal to assist our jurisdictional analysis. Accordingly, on this record, we cannot conclude that Aguirre established the marital estate is of a sufficient size that Tarango would not be prejudiced on remand by Aguirre's acceptance of a total of $19,732 in cash, consisting of negotiated checks in the amount of $18,000 for her share of the marital residence and the land on which it is located and in the amount of $1,732 for Aguirre's fifty percent share of the proceeds

Aguirre also argues, in one paragraph of her jurisdictional letter brief, that the acceptance of the benefits doctrine does not apply because she accepted the money awarded to her in the divorce decree out of economic necessity. In her jurisdictional letter brief, Aguirre states she was "left with virtually no property," "she was awarded custody of the children . . . [but Tarango] was awarded the marital residence," "she was left without a home and testified [at trial] that her only form of employment was cleaning houses and that she made $300.00 per week in doing so," and because she was ordered to leave the marital residence within thirty days after the divorce hearing, she "needed the funds immediately to find a new home for her and the children." We first note that the amount Aguirre earned from her cleaning business was disputed at trial, and the trial court found that Aguirre earned $45,000 annually from the business. Further, Tarango testified Aguirre retained all the income she earned and did not pay any of the community bills during the pendency of the divorce. Although Tarango requested through discovery information about the amount of Aguirre's income and the assets under her control, Aguirre provided no substantive responses to the discovery requests and did not testify at trial about the value of any community assets under her control. Aguirre did not attach to her jurisdictional letter brief an affidavit or any other evidence setting out either her or the children's monthly expenses or whether her income, when combined with the child support Tarango was ordered to pay, was sufficient to meet those expenses. Aguirre's conclusory statements in her jurisdictional letter brief are insufficient to establish the narrow exception of economic necessity. *See Richards*, 371 S.W.3d at 415–16; *Waite*, 150 S.W.3d at 805–07 (noting appellant's affidavit regarding economic necessity for accepting property awarded to him in divorce decree was

---

from the sale of a bull and a calf. *See Leedy*, 399 S.W.3d at 342–43 (concluding cash benefits exception to acceptance of benefits doctrine was not applicable because appellant failed to adequately brief contention on appeal and failed to establish marital estate was large enough that a cash benefit would not prejudice appellee's rights on remand).

"bereft of details" and an "individual who truly needs an award of money can obtain it and still appeal simply by filing a comprehensive affidavit").

## Conclusion

Tarango has established that Aguirre accepted benefits under the divorce decree that she now challenges on appeal. In response, Aguirre has not met her burden of establishing that an exception to the acceptance of the benefits doctrine is applicable in this case. Accordingly, we grant Tarango's motion to dismiss on the basis of the acceptance of the benefits doctrine and dismiss this appeal as moot.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

121560F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF L.T. AND E.T., CHILDREN

No. 05-12-01560-CV

On Appeal from the 401st Judicial District Court, Collin County, Texas, Trial Court Cause No. 401-52955-2011. Opinion delivered by Justice Fillmore, Justices FitzGerald and Evans participating.

In accordance with this Court's opinion of this date, the appeal is **DISMISSED** as moot.

It is **ORDERED** that appellee Saul Tarango recover his costs of this appeal from appellant Yadira Tarango Aguirre.

Judgment entered this 3rd day of June, 2014.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE